case number 21-5186 RICU LLC appellant versus United States Department of Health and Human Services et al. Mr. Panuccio for the appellant, Ms. Utrecht for the appellate. Good morning, counsel. Mr. Panuccio, please proceed when you're ready. Good morning. May it please the court, Professor Panuccio for appellant. I'd like to reserve one minute for rebuttal if possible. This case concerns the urgent need for life-saving ICU doctors as the COVID-19 pandemic continues to overwhelm hospitals across the country. Medicare's refusal to pay for RICU's ICU telehealth services is causing great harm and rests on a legal error. The key question in this appeal is whether RICU can challenge that legal error in federal court. I'd like to start with three undisputed facts about jurisdiction. First, the Supreme Court has explained that there is a strong presumption in favor of judicial review of causes of action arising under the Medicare Act. Second, the government concedes that RICU has a cause of action arising under the Medicare Act. Third, the government concedes that RICU cannot itself access the channels of administrative review established by agency regulations. Accordingly, the question is, how does RICU get its claim arising under the Medicare Act into federal court? HHS's eight-month multilayered and intricate but ad hoc process of determining whether RICU's services qualify for Medicare reimbursement was sufficient to satisfy the jurisdiction. And if it wasn't, then federal question jurisdiction must be available. I'll turn first to the question of jurisdiction through channeling. Section... So before you go there, can I just ask you about, just as a factual matter, I understood that the rule, the HHS rule that expanded coverage for certain kinds of telehealth services as a sunset provision. Am I right about that? And that the rule is, or this aspect of it, is supposed to expire by the end of the year? Yes, the waiver for ICU telehealth, the end of the year or the end of the public health emergency, I believe, whichever is later. So the way this traditionally works, there are certain telehealth services that are reimbursable by statute. And then the agency is authorized by rule to add services to that list of the telehealth list, they call it. And when the pandemic began, there had been many proposals over the years to add ICU telehealth services. The agency had rejected those over the years. But when the pandemic began and there was this urgent need for increased coverage in ICUs and also safety concerns about telehealth being safer for transmission from patients to doctors and so forth, they greatly expanded the list of what was payable by Medicare in telehealth, ICU was included. Now, they have put ICU telehealth on a sort of a special category saying, we think there may actually be evidence to continue this in the future, but we'll see what experience... But they haven't done so. So do we have a potential mootness problem if this provision sunsets by the end of the year? Well, again, I think that, unfortunately, with the Omicron variant and potentially other variants, I think the public health emergency is ongoing. So there's no mootness right now. And also all of the services that have been rendered this year, if the agency's determination were not in place, those would be payable claims that are accruing right now. I see. Thank you. Thank you, Your Honor. So if I may turn specifically to this question of jurisdiction through channeling, this happens through Section 1395ii of the Medicare Act, which incorporates Section 405G of the Social Security Act, a complicated statutory scheme, but sort of a simple path to jurisdiction. And that is, 405G says, any individual is entitled to judicial responsibility. Here, HHS provided that hearing and final decision to RICU through its eight-month process, according to the agency's own descriptions of that process while it was going on. They told RICU they were, quote, actively investigating RICU's claim. They said they were working to resolve the extremely complex set of legal issues. They asked RICU to provide the agency with a legal brief, which they then, quote, reviewed carefully to provide a final response. They put what they called their answers and their response through, and this is, quote, a detailed clearance process. And then on June 10th, 2020, they said they had conducted, quote, an exhaustive review to determine the agency's position on this, what they called an important matter. And that was, again, the June 10th letter. RICU then appealed that— Can I just understand the architecture of your argument? So for purposes of this part of your argument, I take it that even if RICU were an entity that itself could then bring a claim later—I know part of your argument is that RICU can't, and it's not enough to go through proxies, but let's just suppose that you could—then your argument would be that even if we could, and we could seek reimbursement for a specific payment, then we don't have to do that as long as we engage in this kind of anticipatory back and forth about the way a higher-level policy decision operates. It's really up to the agency. As the Supreme Court said in Salfie, and as the Seventh Circuit said in Boley, and then as the Supreme Court said again two years ago in Smith, the hearing process is whatever process the agency decides upon. Now, it may have processes that it establishes through regulation, and it can insist on those processes if somebody is eligible for them, but it can also say, we're going to engage in an ad hoc process, and that is enough. The language in Boley, for example, in the Seventh Circuit was a 405G quote hearing means a decision after whatever process the agency itself elects to use. But do you read any of those cases overruling the interpretation that the Supreme Court offered in Illinois counsel? I know you try to distinguish that case, but as I read the opinion, it's a broad interpretation of how the statutory scheme works, and you have acknowledged that your client doesn't fit within that description. And so the question is, why should an exception be made when you haven't argued, as I understand it, that one of your client's clients, as it were, could pursue this? Thank you, Your Honor. Two points in response to that, if I may. First, we actually believe Illinois counsel supports us, not cuts against us. What happened in Illinois counsel, and there's some confusion on this, I think, in lower courts, but you have to look at each part of Illinois counsel. And in part four, Illinois counsel went through and said, if channeling is legally unavailable, then federal question jurisdiction must be available. And it also said... But the question is, to whom? Yes, Your Honor. So our view is, it would be inconsistent with any notion of due process or American law to say that a party has to rely on some third party for exhaustion or channeling, that's what this court said in the Jicarilla case. Again, what I'm trying to get at is, it's not a third party, is it? Your client represents and provides this service to others. Isn't that correct? Our client has independent contractor doctors, which it then provides to hospitals. But I think the best way to think about this is to juxtapose this court's decision in American chiropractic. In that case, the association was bringing a claim, but it only had standing to bring the claims of its member chiropractors. And then the court said, well, those chiropractors themselves could bring the claim. So the association has a way to channel its claims, its very members, the very claims they're trying to bring can be channeled. In this case, we don't have that same legal relationship. But isn't it about the issue? Isn't it about the claim? I mean, isn't that what this court said in American health? There was some, I would say, dicta to that effect in that case. But what it relied on, it pointed to the Ringer case. And Your Honor, respectfully, I think close attention is warranted to the progression of Supreme Court cases. You had Ringer, then you had Michigan Academy, then you had Illinois Council. In Ringer, there was some you had to have claims come through a monetary benefit claims process. So the court then said a few years later in Michigan Academy, well, if that's so, then any claim not dealing with monetary benefits, such as a challenge to methodology, is outside the channeling jurisdiction process and it can go through 1331 jurisdiction. Supreme Court came back again in Illinois Council and said, no, no, that's wrong. Everything must go through the channeling process. And so it's not just claims for monetary benefits. It can be program eligibility. Does that help you or hurt you? I think that helps us because it says every kind of claim arising under the Medicare Act is eligible for channeling. Channeling is not a foreclosure provision. It is only a routing provision. And therefore, we can be routed through channeling. Now, the agency hasn't set up a particular process for this kind of claim. So one of two things must be true. Either the agency can engage in the ad hoc process it did here and that is sufficient for channeling. And that's what the Seventh Circuit said in Bowley. Any kind of hearing that the agency deems sufficient. Or if that's legally unavailable, then 1331 jurisdiction must be available. And that's... Wouldn't you have to at least establish, though, that the agency intended the kind of back and forth that it engaged in with you to be the channeling process? I mean, you're just saying in retrospect, that we asked them various questions and they answered. And so we should construe that as the agency's intention of giving you a hearing concerning this issue. But do you have evidence somewhere in the record that shows that the agency perceived itself to be doing that? May I continue? Yeah. Two responses to that, Your Honor. First, if you take a look at a case like Salfie, for example, which was one of the early Supreme Court cases on this channeling and jurisdiction issue. There, the question that was presented ultimately was not heard in a hearing by the agency. And the government disputed that. And the court said, no, you can come here anyway, because we think it was sufficient. Once the agency concluded it did not have the power statutorily or constitutionally to grant the relief you seek, you can still be in federal court. So I think it is important to look at the things the agency was saying about what it was doing at the time. And if you go back and look at that record, we had every indication from the agency that they were taking this seriously, that they had reviewed it on multiple levels, and then ultimately that they had everything they needed to decide this matter conclusively, ending on October 28th, 2020, in a letter sent, according to the agency's own words, at the request of and on behalf of the Secretary, reaffirming the determination that the agency had no statutory power to grant the claim of eligibility. So that was the agency's final conclusion. Did you file a timely claim in this case? I understood that there was some sort of a time lag and you needed to come to court within a certain amount of time under the Medicare statute, correct? The statute does say 60 days, Your Honor, but the government has not raised that below. And if you look at Southie at page 764, or Eldridge at note 9, or Bowen v. City of New York at page 478 and note 10, all of those cases say if the government does not raise the 60-day issue below, it is waived. It is not a jurisdictional issue, and the government has never raised it. But they don't raise it because they don't believe that was the final word of the agency. They say you didn't present your claims in the way the statute says. So do you have a case that suggests that when the government makes that kind of argument, that they disagree with you that that was the final agency action, that their failure to go on to say, and even if it was, you're untimely, waives the claim? Do you have that? Southie. I mean, Southie itself, the government said, we don't believe this particular claim is properly in court. For other reasons other than the 60 days, they failed to raise the 60-day issue. They still have to anticipate that we might win on that question and raise all of their defenses. So in all three of these cases, that's a pretty clear holding of the Supreme Court, that if the government does not raise 60 days below, the 60-day issue below, it is waived. It is a non-jurisdictional issue in the statute. Thank you, Mr. Paniccio. Let me make sure my colleagues don't have additional questions for you now. We'll give you a little bit of time for rebuttal. Thank you, Your Honor. Thank you. We'll hear from the government now. Piotrek? Good morning, Your Honors. Jennifer Piotrek on behalf of the government, and I please the court. Your Honor, the case today presents a simple question, which is whether RICU can obtain judicial review, which is only available if RICU has presented a claim to the Secretary. RICU has not done so. As this Court and Supreme Court have recognized, especially in the American Hospitals Association, presentment requires presenting a claim in the context of a specific claim for benefits. So in this case, it would look something like, here are the patients that we've treated that are Medicare eligible. We would like payment for treating them. And that's something that you would acknowledge that RICU can never do. I don't know about never. At least at this moment, RICU is not a Medicare-enrolled provider. There hasn't been any discussion about whether they want to be or whether they could be. So on this record, at this moment, they cannot do so. But of course, any Medicare-enrolled beneficiary who received the services could potentially file a claim for benefits saying, I received this service, and I would like to have Medicare pay for it. If they've assigned the claim to the hospital, the hospital can bring that same exact claim for payment to Medicare, we've provided the service, we would like payment for it. When you say when they've assigned the claim to the hospital? When the patient has signed the claim, yes. And in either case, this exact argument that RICU has brought here, which is that Medicare is not interpreting the statute or the regulations properly and that it should cover these services, that exact argument can be properly presented and channeled through the administrative procedures. That hasn't happened. To date, not a single one of the patients that RICU has treated or the hospitals that RICU contracts with has ever presented a specific claim for payment to the secretary. We don't know who they've treated, what they've treated. Opposing counsel says this really isn't about particular treatment. This is about an interpretation by the agency of the various laws pertaining to this and a determination that the kinds of services that RICU offers are not covered. And he says that's been given a full hearing, that they've asked repeatedly, that high level agency officials have responded. So why is he wrong about whether or not this claim has actually been presented? It's not a claim for payment in the traditional sense. Your Honor, I think the short answer is an argument has been presented, but a claim hasn't been. And I would direct this court to look to even Heckler versus Ringer, where the very issue in that case was that patients wanted a particular type of service to be paid for by Medicare. And the Supreme Court in that case said, it doesn't matter that at least one of these patients has not yet received the service. It doesn't matter that he wants it to be paid for Medicare. The question is, have you actually presented a claim? Have you told the agency, this is how much I want to be paid for? And then through that process, that is presentment. And through that process, you can exhaust your remedies and obtain judicial review. All right. So assuming that they don't present, there is an exception, do you concede, to presentment in a circumstance in which the channeling would cut off judicial review entirely. And they say that's the case here because they are not able to bring their claim. Yes. Under Illinois counsel, there is an exception to the channeling, including the presentment requirement, when all avenues for judicial review are cut off. As this court and other courts of appeals have recognized, it's not about whether this particular claimant can bring their claim. It's about whether the actual argument can be brought for judicial review in the broad swath of circumstances. And in this case, as I've mentioned, there are both third parties, the beneficiaries from Medicare, as well as the hospitals with RICU that RICU contracts with, both of whom can present a specific claim for payment to Medicare and raise this exact argument, in which case judicial review would be available. What's your response to the argument that they really aren't necessarily going to do that? By that, I mean the hospitals, that they're not sufficiently incentivized to bring their claim to the agency. So I can only speculate, Your Honor, as to why a hospital may or may not have presented a claim here. What I would answer, in response to your question, this court in urological counsel, which is the case on which opposing counsel primarily relies, made pretty clear that there were extenuating circumstances. There was very clear proof that the hospitals in that case had conflicting interests, that they, their interest in bringing this kind of, they did not have an interest in bringing that kind of claim because their financial interests were opposed to the position that the plaintiff in that case wanted to make. There's no evidence of that here. You know, every Medicare beneficiary who receives this treatment obviously has a financial incentive to have it paid for by Medicare, and the hospitals who are paying for RICU's treatment obviously have a financial incentive to have part of that money. Do you have a sense of why it hasn't happened? Again, it would only be speculating. One possible reason would be because the hospitals think that on the merits, RICU does not have a good argument, and they don't want to, they don't want to make an argument. Another possible reason is because up until March of 2020, when this, you know, sunset provision was enacted, or not prolegated, there was no arguable way to pay for critical care telehealth services at all, let alone outside of the United States. And so it's only been in the last, you know, year and a half, and then even more recently in the last couple of months, that there has been possibly an argument that you could pay for any critical care telehealth services. So beyond that, Your Honor, I really, I can only speculate as to why a hospital hasn't specifically requested a claim for reimbursement. Can I ask you, with respect to the speculation, this brings to mind to me a question about the burdens in this area with respect to this issue. So who bears the burden of establishing whether an authorized claimant is sufficiently incentivized to bring the claim? Is it you or that? I'm not sure any of the cases have specifically discussed this in terms of burden, but if you look at the broad swath of cases, it's clear that the Illinois Council exception is a very narrow one, and that, you know, Congress clearly said that all claims have to be channeled, and the ways in which this Court and other courts have talked about channeling, and this exception under Illinois Council, they have said it doesn't matter if there are, you know, if it's going to be inconvenient, or if there are signs that, you know, it might take a long time for a claim to be presented. The question is whether basically there is a complete preclusion of review. And so here, you know, our RICO has pointed to speculation about why claims haven't been brought, said, well, maybe hospitals think it will take a long time, maybe, you know, it will be costly to do this, but all of those are ordinary burdens that are brought, that are presented in any channeling case, in any Medicare case. I noticed in looking at the record that there wasn't evidence to this effect. Are we looking only at the allegations of fact or statements that RICO is saying, RICO is saying about this, or do they have to present some evidence concerning what actually happens, or would happen, or is likely to happen concerning the hospitals bringing these claims? I would, I guess the, Your Honor, I would answer that question by referring back to your illogical counsel, where there were elaborate pleadings about specifically what had happened. There was a very lengthy delay. There was clear, you know, allegations that were not contradicted by declarations about how the hospitals did not have a financial incentive to bring this kind of claim because they were benefited from Medicare's regulation. There has not been anything close to that in this case. In particular, Your Honor, the declarations submitted by RICO in the district court note, among other things, that they have long worked with hospitals, continue to work with many hospitals, and, you know, they are still providing these services. So to the extent there are any beneficiaries, Medicare beneficiaries, who are receiving those services, the hospitals clearly have a financial incentive to try to pursue this claim by asking for reimbursement from Medicare. That's just a practical question. So suppose that a particular entity that you think can bring the claim does do it to trigger the 405 process. And is there an avenue in the agency for RICO to participate in that? Oh, I'm sorry, Your Honor. I'm not certain I know the answer to that question. I know that, so I could point you to the regulations, for example, for beneficiaries to bring claims, which is 42 CFR 405.906. It does have, it does state who the parties to that sort of proceeding are, and so that might eliminate, provide some, but I don't have the regulation in front of me, so I'm sorry I can't directly answer it. But I think what's important to note is that because the hospitals and RICO have similar financial incentives, these sorts of arguments obviously can be brought in in that case. Your Honors, if there are no further questions, we would ask that you affirm the judgment of the district court that there's no subject matter jurisdiction. Thank you. Thank you, Ms. Utrecht. Mr. Pinocchio, we'll give you your one minute back that you asked for. Thank you, Your Honor. I'd like to address two points, if I can. The first one is the third party proxy, this supposed proposition that we can get into court through a third party unrelated proxy. I want to read what this court said in Jicarilla Apache Nation in 2010. A party challenging agency action does not fail to exhaust when the only opportunity for presenting to the agency is an ex parte contact. There is no support in law or logic for the proposition that A can be can be held to have failed to exhaust remedies available only to B. That is what this court said, and of course that's a traditional notion of due process. You don't have to rely on parties that aren't here, and you will search in vain in Illinois Council to find any announcement of this third party proxy rule. It's not there, and it stems from confusion about what happened in part four and part five, and we parse that carefully in our brief. So wouldn't the, I'm sorry, I'll let you finish your second thought, but the whole discussion in neurological interests presupposes that that's possible. Well, I mean, it's hard to, why do we get into all that if there was no way for a proxy to bring a claim to begin with? Your Honor, it's a very good question, and I've pondered that, and here's the best answer I can come up with. Neurological interests look back to American chiropractic. In American chiropractic, the issue there was the proxy was a member of the organization, and the organization was bringing their claims, and then the court said in your logical interest, well, your logical interest doesn't quibble with the idea that you could have theoretically a proxy, but then what did the court do in your logical interest? It said, well, in unrelated party proxies that have been identified by the government are not sufficient. So the only holdings of this court, put aside the discussion, the only holdings of this court are a proxy that is a member of the organization is sufficient, proxies that are not members of the organization are insufficient. But you can't divorce that from the reasoning. It was insufficient in part, if not in whole, because they had not the same interests. The interests weren't aligned, so that doesn't necessarily tell us what to do in a situation in which you have a third party with aligned interests. Judge Jackson, I think you identified in your questions to the government exactly what the problem with this regime would be, and again, it has no mooring in any Supreme Court case. The problem is, how will we ever produce the evidence, you know, at trial sufficient to absolutely prove the interests of other parties who are not in court, who may not want to come to trial. They may not want to come to trial. They may not want to come to trial. It's a matter of time for whether they bring a claim or don't. The one thing we know is, as we stand here today, still, after months and months of this rule being in place, being in agency guidance, no one has brought a claim. RICU is the only party that has taken the initiative, the expense to try to bring this forward. And the government is saying, too bad, there is no path to federal jurisdiction for you. And that is completely contrary to what the Supreme Court has repeatedly said, which is, the Medicare Act presupposes there is a strong presumption that you ultimately, one way or another, can get to court, whether that's through channeling, or if not, it's not a foreclosure provision, then you get 1331 jurisdiction. And that's what the Ninth Circuit said in the Harrow case that we cite. That's a 747 F3rd at 1115. There was a lawyer who had this sort of ancillary claim from the parties he represented. And they said, well, you don't have an avenue to get in. They've given you no avenue. 1331 federal question jurisdiction is then available. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Rogers, Jackson